**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02353-WJM-KLM

SKYLINE POTATO COMPANY,

    Plaintiff,

v.

ROGERS BROTHERS FARMS, INC.,

    Defendant.

---

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

---

Pursuant to 7 U.S.C. § 499g(c), Plaintiff Skyline Potato Company ("Skyline") brings this action seeking reversal of the Secretary of Agriculture's ("Secretary") decision awarding Defendant Rogers Brothers Farms ("Rogers") $216,302.41 as reparations on a contract for the sale of potatoes.

Before the Court is Skyline's Motion for Summary Judgment (the "Motion") asking the Court to find that Rogers has failed to meet its burden of establishing that the Court has subject matter jurisdiction this dispute. Skyline contends that Rogers filed its claim with the Secretary outside of the nine month jurisdictional window. (ECF No. 34.) For the reasons set forth below, the Court DENIES the Motion.

## I. BACKGROUND INFORMATION

The following facts are not disputed for purposes of the instant Motion: Rogers is a farm that produces potatoes and wheat. (ECF No. 43-1 at 5.) Rogers does not pack and sell its own potatoes. (*Id*.) In 2005, Rogers grew a crop of "nugget" Russet potatoes and placed them in a storage shed. (*Id*. at 5-6.)

Skyline is a licensee[1] under the Perishable Agricultural Commodities Act ("PACA") that approached Rogers in October 2005 about packaging and selling its "nugget" potato crop. (*Id*.) In July 2006, the parties entered into an oral contract[2] whereby Skyline would package and sell Rogers's 2005 potato harvest. Between July 10, 2006 and July 14, 2006, Skyline removed 37,489 sacks[3] of potatoes from Rogers's shed. (*Id*. at 6.)

On August 24, 2006, Skyline provided Rogers with a partial accounting in "pack out" form along with a check for $87,000. (*Id*.) On November 8, 2006, Skyline provided a final accounting in "pack out" form with a check for $62,029.00. The total payment from Skyline to Rogers for the entire crop was $149,029.00. (*Id*.)

Rogers filed an informal complaint with the Secretary on May 10, 2007. (ECF No. 34-2.) Rogers alleged that Skyline had "agreed to purchase half of Rogers' potato

---

[1] Under the Perishable Agricultural Commodities Act, the Secretary of Agriculture issues licenses to entities that do business in perishable commodities. *See* 7 U.S.C. § 499c-d. Skyline holds a license issued by the Secretary of Agriculture. (ECF No. 34-1 at 5.)

[2] The terms of the contract were disputed by the parties in the proceedings before the Secretary and are also disputed in this action.

[3] The parties use the terms "sack", "hundredweight", and "cwt" interchangeably. At oral argument on the Motion, the parties explained that these phrases are all terms of art in the industry that mean one hundred pounds of produce.

crop (18,587 sacks) for $9.00/sack and sell the other half of the crop for the benefit of Rogers with a guaranteed minimum payment to Rogers of $10.00/sack." (ECF No. 34-2 at 1.)

On July 10, 2007, Rogers submitted an invoice to Skyline for the potatoes. The invoice was dated July 10, 2007 and sought payment for 18,587 sacks of potatoes sold "over the scale" at $9.00/sack and 18,587 cwt of potatoes at $10.00/sack. (ECF No. 34-3.)

Rogers filed a formal complaint with the Secretary on October 9, 2007. (ECF No. 34-4.) It alleged: "Rogers and Skyline entered into an oral agreement whereby Skyline agreed to purchase half of Rogers' potato crop (18,587 sacks) for $9.00/sack and agreed to sell the other half of the crop for the benefit of Rogers with a guaranteed <u>minimum</u> payment to Rogers of $10.00/sack." (ECF No. 34-4 at 1.)

Skyline moved to dismiss the complaint as untimely but said motion was denied by the Secretary. (ECF No. 37-1.) Skyline renewed its motion to dismiss at the hearing before the Secretary. Following supplemental briefing, the Secretary again denied the motion to dismiss. (ECF No. 37-2.) The Secretary issued a reparations decision on August 26, 2010 awarding Rogers $ 216,302.41. (ECF No. 34-1.)

Skyline filed this action on September 24, 2010. (ECF No. 1.) The instant Motion for Summary Judgment was filed on February 22, 2011 and the case is stayed pending resolution of the instant Motion.

## II.  STANDARD OF REVIEW

Plaintiff brought this action pursuant to 7 U.S.C. § 499g(c), which states, in relevant part:

> **Appeal from reparation order; proceedings**
>
> Either party adversely affected by the entry of a reparation order by the Secretary may, within thirty days from and after the date of such order, appeal therefrom to the district court of the United States.... Such suit in the district court shall be a trial *de novo* and shall proceed in all respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated....

7 U.S.C.A. § 499g(c).  All this essentially means, however, is that on a motion for summary judgment in a PACA case, the "the Secretary's findings are dispositive when there is no evidence submitted in dispute.  This interpretation gives effect to the prima facie clause of the Act [PACA], by making the Secretary's findings conclusive unless effectively rebutted. Once rebutted, the Court is then able to reweigh the evidence, thus giving effect to the provision for *de novo* review."  *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1033 (D.C. Cir. 1988).  The prima facie validity given to the Secretary's findings essentially creates a burden of production, which the non-moving party may satisfy by setting forth "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d at 1032-33.

In an appeal from a reparations order, legal questions are reviewed *de novo*.  7 U.S.C.A. § 499g(c); *Spano v. Western Fruit Growers*, 83 F.2d 150, 152 (10th Cir. 1936) (The Act "merely created a rebuttable presumption.  It establishes a rule of evidence

and does not prevent any defense. It does not interpose an obstacle to the presentation of any contest on the issue nor does it take away the right of either party to introduce any pertinent or relevant evidence."); *B.T. Produce Co, Inc. v. Robert A. Johnson Sales*, 354 F. Supp. 2d 284, 285 (S.D.N.Y. 2004) (noting that the district court reviews issues *de novo* except for findings of fact made by the Secretary). Whether a judicial body has jurisdiction over an action is a question of law. *Plaza Speedway Inc. v. U.S.*, 311 F.3d 1262, 1266 (10th Cir. 2002). Thus, the Court will defer to the factual findings of the Secretary unless rebutted by new evidence and will review the Secretary's jurisdictional and other legal determinations *de novo*.

### III. ANALYSIS

Though styled as a Motion for Summary Judgment, the parties agree that the instant Motion is actually more akin to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and the Court will analyze it accordingly. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (*quoting Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). To the extent the defendant attacks the factual basis for

subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id.* Ultimately, and in either case, the party bringing the claim has "[t]he burden of establishing subject matter jurisdiction" because it is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

Claims brought pursuant to PACA are "purely statutory creatures." *Costa Oro, LLC v. Evergreen International, Inc.*, 2009 WL 765226, *3 (N.D. Ill. Mar. 23, 2009). The statute of limitations for filing a reparation complaint is set forth in 7 U.S.C. § 499f(a)(1) which states that such action may be brought "at any time within nine months after the cause of action accrues." The Secretary views the nine month limitations period as jurisdictional. *Bigger's Brothers Inc. v. Produce Products, Inc.*, 42 Agric. Dec. 1673, 1675 (1983) ("When more than nine months elapses from the time of cause of action accrues, this Department is powerless to take any action.").

As the party seeking relief, Rogers bears the burden of establishing that its claim was timely filed with the Secretary, thereby establishing subject matter jurisdiction for both the Secretary and the Court. To meet this burden, Rogers must show that its informal complaint was filed with the Secretary within nine months of the time its cause of action accrued.

In a PACA action, "[t]he general rule is that a cause of action accrues when the

right to institute and maintain a suit arises, and not before." *George Wuszke v. Fruit Pak, Inc.*, 42 Agric. Dec. 1207, 1211 (1983) (citing *Boler Fruit & Veg. Co. v. Kenworthy*, 19 Agric Dec. 226 (1960)).  Because the dispute in this case involves whether the amount paid for the potatoes was appropriate, Rogers's cause of action accrued when payment was due.

The applicable regulations includes eleven different provisions governing the timing of payment under PACA.  *See* 7 C.F.R. § 46.2(aa)(1)-(11).  When payment is due is dependent on the relationship between the parties.  For purposes of this action, the only two relevant provisions are that associated with a grower/buyer relationship and that associated with a grower/growers' agent relationship.  For "produce purchased by a buyer", payment is due "within 10 days after the day on which the produce is accepted".  7 C.F.R. § 46.2(aa)(5).   "Whenever a grower's agent or shipper harvests, packs, or distributes entire crops or multiple lots therefrom for or on behalf of others, payment for the initial shipment shall be made within 30 days after receipt of the goods for sale or within 5 days after the date the agent receives payment for the goods, whichever comes first."  7 C.F.R. § 46.2(aa)(9).

The parties agree that, for purposes of the instant Motion, the key determination is whether Skyline was acting as a growers' agent or was instead a straight-up buyer in its transaction with Rogers.  If Skyline was a buyer, then payment was due 10 days after shipment, meaning that Rogers's cause of action accrued on July 24, 2006 and its filing of the informal complaint on May 10, 2007 was untimely.  But if Skyline was a growers' agent, as the Secretary found, payment was due—and Rogers Brothers's cause of action accrued—on August 14, 2006 and, based on this accrual date, Roger's

informal complaint was timely.

The regulations promulgated pursuant to PACA define a "growers' agent" as "any person operating at shipping point who sells or distributes produce in commerce for or on behalf of growers or others and whose operations may include the planting, harvesting, grading, packing, and furnishing containers, supplies, or other services." 7 C.F.R. § 46.2(q). The regulations also provide a description of the duties of "growers' agents":

> Growers' agents sell and distribute produce for or on behalf of growers and others and, in addition, may perform a wide variety of services, such as financing, planting, harvesting, grading, packing, furnishing labor, seed, containers, and other supplies or services. They usually distribute the produce in their own names and collect payment direct from the consignees. They render accountings to their principals, paying the net proceeds after deducting their expenses and fees.

7 C.F.R. § 46.30(b).

In the instant Motion, Skyline challenges the Secretary's finding that Skyline was a "growers' agent" with respect to the first part of the contract, *i.e.* Skyline's purchase of the first half of the potato crop for $9.00/sack.[4] Skyline argues that Rogers admitted in its pleadings that Skyline was a straight-up "buyer" with respect to the first half of the contract rather than a "growers' agent" and that Rogers is bound to this admission. (ECF No. 34 at 19; ECF No. 38 at 2.) In the alternative, Skyline argues that the

---

[4] For purposes of the instant Motion, Skyline does not dispute the Secretary's finding that it was a growers' agent with respect to the second part of the crop/contract. In the case overall, however, Skyline contends that there was no bifurcated contract. Skyline contends that the parties entered into an oral contract whereby it would market and sell Rogers's entire crop of potatoes with no promised minimum payment. (ECF No. 1 ¶¶ 21-24.)

evidence shows it was not a growers' agent with respect to the first half of the crop. The Court will examine each argument in turn below.

**A.      Whether the Parties' Relationship is Determined by Judicial Admission**

Though not described as such by Plaintiff, Skyline is essentially arguing that Rogers is bound by its judicial admissions in the complaint filed before the Secretary, and that its binding judicial admissions conclusively establish that its complaint with the Secretary was untimely.  In this case, Rogers's sworn complaint filed with the Secretary stated: "Rogers and Skyline entered into an oral agreement whereby Skyline agreed to purchase half of Rogers' potato crop (18,587 sacks) for $9.00/sack and agreed to sell the other half of the crop for the benefit of Rogers with a guaranteed minimum payment to Rogers of $10.00/sack."  (ECF No. 34-4 at 2.)  Pursuant to 7 U.S.C. § 499g(c), once the Secretary's decision is appealed to the district court, the pleadings certified by and relied upon by the Secretary become the pleadings in this action.  Thus, Rogers's formal complaint filed with the Secretary serves as the Complaint in this case.

"Judicial admissions are formal admissions which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *Guidry v. Sheet Metal Workers Intern. Ass'n, Local 9*, 10 F.3d 700, 716 (10th Cir. 1993).  The Seventh Circuit has explained judicial admissions in these terms:

> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." Michael H. Graham, Federal Practice and Procedure: Evidence § 6726 (Interim Edition); see also John William Strong, McCormick on Evidence § 254, at 142 (1992). A

> judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, my be controverted or explained by the party. Id. When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission. Michael H. Graham, Federal Practice and Procedure § 6726, at 536–37.

*Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995). Judicial admissions must be "deliberate and clear." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

A statement or assertion of fact in a complaint or other pleading may serve as a judicial admission. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995); *Schott Motorcycle Supply v. American Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992). Courts, however, will not construe assertions as judicial admissions where inconsistent facts are alleged as part of alternative or hypothetical pleadings in the same case. *Schott Motorcycle Supply*, 976 F.2d at 61; *Garman v. Griffin*, 666 F.2d 1156, 1159 (8th Cir. 1981). Such a rule is consistent with the liberal pleading policies embodied in Rule 8 of Federal Rules of Civil Procedure. *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990); *Garman*, 666 F.2d at 1159–60.

Skyline argues that Rogers's statement in its Complaint that "Skyline agreed to purchase half of Rogers' potato crop (18,587 sacks) for $9.00/sack" is a judicial admission showing that it was a buyer with respect to the first half of the crop rather than a growers' agent. However, the Court believes that Skyline is attempting to read too much into this statement. The statement alleges that Skyline bought potatoes from Rogers for a certain price and that is the extent of the statement. It contains no details

about the handling and packaging of the potatoes, the timing of payment, or any other factors that tend to show whether the relationship between the parties is one of buyer/seller or grower/growers' agent. The mere fact that the parties agreed on a specific price for a certain portion of a grower's crop, without more, does not establish the nature of the parties' relationship. *See Dominc Schulist v. Wysocki Sales, Inc.*, 46 Agric. Dec. 694, 699-700 (1987).

A judicial admission must be deliberate, clear, and unequivocal. *Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992). Rogers's statement in the Complaint is a clear statement of the pricing scheme agreed to by the parties, but it is not a clear and unequivocal statement of the parties' overall relationship. Were the Court to accept Rogers's statement as a judicial admission with respect to the parties' relationship, it would have to ignore the evidence respecting the other factors relevant to whether a growers' agent relationship existed (*e.g.*, type and timing of invoices, packaging and handling of crop). The law does not permit the Court to do this. Thus, the Court finds that the allegations in Rogers's Complaint do not conclusively establish that its relationship with Skyline was that of grower/buyer with respect to the first half of its potato crop rather than grower/growers' agent.

**B.    Nature of the Relationship Between the Parties**

Because there is no binding admission on the part of Defendant with respect to the parties' relationship, the Court must examine the evidence to determine whether Rogers has shown that its informal complaint with Secretary was timely. As the complaining party, Rogers bears the burden of establishing the Court's subject matter

jurisdiction by a preponderance of the evidence. *U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n.5 (10th Cir. 1999). Therefore, Rogers must show that its cause of action accrued within the nine month jurisdictional time limit.

Rogers argues that its claim was timely because Skyline was acting as a growers' agent with respect to the entire crop of potatoes. Skyline contends that it was not a growers' agent with respect to the first half of the crop.[5]

The absence of a written agreement in this case makes determining the relationship between the parties difficult. However, it is undisputed that Rogers only planted and harvested potatoes; they did not grade, pack, or deliver the potatoes for resale. The evidence is uncontroverted that Skyline performed these functions for Rogers with respect to the entire crop and did not differentiate between the first half of the shed and the second half. It is also undisputed that Rogers did not invoice Skyline for the potatoes within the time period that would be expected in a grower/buyer relationship.[6] Rather, Skyline provided Rogers with two invoices—one preliminary and one final—that were in the nature of "pack out" invoices.

In *Dominic Schulist v. Wysocki Sales, Inc.*, 46 Agric. Dec. 694 (1987), the grower

---

[5] As previously noted, Skyline disputes the existence of a two-part contract and, in the case overall, alleges that there was an oral agreement to act as a buyer's agent with no minimum payment promised. (Compl. ¶¶ 22-24.)

[6] Rogers eventually sent an invoice to Skyline but it was not until nearly a year later, after it had filed an informal complaint with the Secretary. Rogers contends, and Skyline does not dispute, that it only submitted the invoice on advice of counsel for purposes of pursuing its claim with the Secretary. Because this invoice was so remote to the transaction and was provided only on the advice of counsel for the purposes of litigation, it is not compelling evidence of the parties' understanding and intent with respect to the nature of their relationship.

sold 20 pound bags of potatoes to the buyer on two different occasions at a rate of $4.50/sack. After much of the crop was discovered to be rotten, the buyer "dumped" much of the produce and paid the grower for only a portion of the crop. The parties disputed the nature of their relationship—the grower contended that their transactions were a straight sale and the buyer argued that it was acting as a growers' agent. In proceedings before the Secretary, the buyer produced invoices containing a provision titled "GROWERS AGENT CONTRACT AND PICKUP TICKET". Rather than deferring to the titles assigned themselves by the parties, the Secretary looked at the timing and nature of the invoices and found that "no amount of contract verbiage describing a growers' agent relationship can overcome what actually happened in this case." *Id*. at 700. The Secretary stated "while the document appears to describe a growers' agent relationship, the actual relationship as it existed between complainant and respondent does not fit into that category as described in the regulations." *Id*. at 699. The Secretary found that the buyer was not acting as a growers' agent with respect to the potatoes but had purchased them straight up from the grower.

In *Lozano v. Whizpac*, 46 Agric. Dec. 658 (1987), the Secretary held that a purchaser who was required under a contract to "pack, sell, and ship" tomatoes was a growers' agent. The basis for this holding was, in part, the fact that the purchaser had provided invoice to the farmer rather than the other way around, and that these invoices were "pack out" invoices.

In this case, the Secretary found that the first part of the transaction was not a pure sale triggering a 10 day payment because "the agreement of the parties was never for a specified quantity of potatoes at a specified price. . . 'Half' is not a definite

quantity. The number of sacks involved was not a part of the initial agreement, because the number of sacks was not known before the potatoes were removed from [Rogers's] shed, hauled to [Skyline]'s facility, sorted, and put into sacks." (ECF No. 37-2 at 6-7.) The Secretary also found that the timing and the nature of the invoices demonstrated a growers' agent relationship in that Rogers did not immediately demand payment for the first half of the crop. Rather, Skyline waited until Rogers's potatoes had been resold and then sent a "pack out" invoice showing the net return on each batch of potatoes. (*Id*. at 6.) The Secretary stated: "The significant fact is that the entire crop, or bin, or 'shed-full', of [Rogers's] potatoes, that [Skyline] received and handled, were in fact handled on a 'pack-out' basis, as described by [Skyline's] field representative." (*Id*. at 7.)

The Court agrees with the Secretary's analysis. As alleged by Rogers and admitted for the purpose of this Motion by Skyline, the parties' contract did not specify the amount of potatoes that Skyline was buying from Roger's Brothers (*e.g.*, 10,000 lbs at $9.00/lb). Instead, the contract provided that the rate of payment would be different for each half of the shed of potatoes. Neither party knew how much constituted a "half", even after the potatoes were weighed in the trucks, because neither party knew how much of the crop was viable until Skyline sorted the potatoes, removed the culls, and packaged them for resale. Thus, the Court finds that Skyline was acting on behalf of Rogers Brothers when it sorted, packaged, and delivered for sale the entire shed of potatoes. The Court further finds that the parties had a single, consistent relationship—that of grower/growers' agent—with respect to the entire contract. Because Skyline was acting as a growers' agent as to the entire contract, Rogers has

met its burden of showing by preponderance of the evidence that its informal complaint was timely filed with the Secretary.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff Skyline Potato Company's Motion for Summary Judgment is DENIED.

Dated this 15th day of July, 2011.

BY THE COURT:

_____
William J. Martinez
United States District Judge